IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA

      v.                                                                    24-CR-60-LJV

GREGORY TROTTER,

                      Defendant.

_____

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND FOR OTHER RELIEF

The United States of America, by and through its attorney, Michael DiGiacomo, United States Attorney for the Western District of New York, and Douglas A. C. Penrose and Evan K. Glaberson, Assistant United States Attorneys, of counsel, hereby submits its response to the Defendant's Motion to Dismiss Indictment, Motion for Inspection of Grand Jury Minutes, Motion for Bill of Particulars, Motion for Discovery, and Waiver of Jury Trial (Dkt. 52).

## PRELIMINARY STATEMENT

Defendant is charged by Superseding Indictment with a single violation of 18 U.S.C. § 1001(a)(2), which states "whoever, in any matter within the jurisdiction of the executive … branch of the Government of the United States, knowingly and willfully makes any materially false, fictitious, or fraudulent statement or representation; shall be … imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense under … section 1591, then the term of imprisonment imposed under this section shall be not

more than 8 years." 18 U.S.C. § 1001.  The defendant's motion to dismiss, and additional

complementary motions, are all fundamentally premised on his misreading of the charged

statute.  18 U.S.C. § 1001(a) provides for enhanced punishment where "the matter" within

the jurisdiction of the executive branch "relates to" an offense under Section 1591.  The

defendant erroneously argues that it is his false, fictitious and fraudulent statements that must

"relate" to a violation of section 1591.  There is no such requirement and to impose one would

be inconsistent with the statute's plain language.  Accordingly, the Court should deny

defendant's motions as meritless.


## RELEVANT PROCEDURAL HISTORY

On April 23, 2024, a Grand Jury returned an Indictment charging the defendant with

a violation of 18 U.S.C. § 1001(a)(2) based on statements he made during a September 30,

2022, interview with the FBI.  (Dkt. 14.)  The interview was conducted as part of the

government's investigation into Peter Gerace, who had previously been indicted on various

federal charges in February 2021.  The 2024 indictment did not allege that the matter within

the jurisdiction of the executive branch related to an offense under Section 1591.  The

defendant was arraigned, and motion practice followed.  On January 17, 2025, the Court

scheduled this matter for trial to commence on June 16, 2025.  (Dkt. 42.)

On April 23, 2025, nearly two months before trial was scheduled to start, a Grand Jury

returned a Superseding Indictment charging the defendant with the same violation of 18

U.S.C. § 1001(a)(2), and adding an additional allegation, that the matter within the

jurisdiction of the United States related to 18 U.S.C. § 1591 (sex trafficking), which served to

increase the statutory maximum penalty of imprisonment from five to eight years.  (Dkt. 46.)

At the arraignment on the superseding indictment, the government represented that the superseding indictment did not change the government's theory of the case or the evidence that it planned to introduce at trial.  Instead, the superseding indictment was intended to address a possible issue under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), if the indictment failed to allege what the government had always intended to prove, *i.e.*, that "the matter" being investigated by the FBI when it interviewed the defendant "related to" sex trafficking, among other offenses, committed by Peter Gerace.  Based on these representations, the Court invited the defendant to file any motions he felt were necessitated because of the superseding indictment, but did not change the trial date or the deadlines contained in the previously issued pretrial order.

On May 7, 2025, the government provided defense counsel with early disclosure of Jencks Act/3500 materials.  The government had previously indicated to counsel, on April 30,2025, that it intended to provide early disclosure of these materials, subject to a protective order.  The parties negotiated a protective order, and it was signed by the Court on May 6, 2025 (although the ECF notice was not sent until the following day).

On Sunday, May 11, 2025, the defendant filed the instant motion.

The government filed its pretrial submissions, including its Pretrial Memorandum, on May 12, 2025, pursuant to the Court's pretrial order.  The government's Pretrial Memorandum set forth in detail the facts that the government intended to prove at trial.  In particular, it set forth the scope of the investigation into Peter Gerace, the purpose of government's interview of the defendant, and how that interview related to the matter that was being investigated.  (Dkt. 55 at 3-20.)

## ARGUMENT

Defendant has filed four separate motions for relief. Each fails for the same reason: Section 1001(a) provides for an increased statutory penalty if "the matter relates to" certain enumerated offenses, including sex trafficking under 18 U.S.C. § 1591. The government must prove that the defendant's materially false statements were made "in any matter within the jurisdiction of the executive . . . branch of the United States," but imposes no requirement that the government prove that the defendant had a specific intent to deceive the federal agency or that the defendant had actual knowledge that the false statements were made in a matter within the jurisdiction of the agency. *See United States v. Escalera*, 957 F.3d 122, 131-32 (2d Cir. 2020). Section 1001(a) imposes an increased maximum penalty by modifying the phrase "in any matter within the jurisdiction" and adding the additional aggravating factor that the "matter relates to" Section 1591. Under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), this factor must be presented and proven to a jury beyond a reasonable doubt. However, the sentencing enhancement language does not impose any additional requirements and does not require the government to prove that the defendant's false statements themselves related to or involved sex trafficking.

This is the only interpretation of the statute that is consistent with its text and general principles of statutory construction and consistent with how this and similar statutes have been interpreted by other courts. Once the defendant's incorrect interpretation of the statute has been rejected, each of his motions necessarily must be denied as well. For example, there is no basis to inspect the grand jury minutes to determine "was the grand jury provided with any evidence of the allegedly false statements made by [the defendant] knowingly related to 18 U.S.C. § 1591 sex offenses." (Dkt. 52 at 12.) Nor is there a basis to require the government

to provide a bill of particulars "setting forth the manner in which [the defendant's] alleged false statements are 'related' to an offense under 18 U.S. C. § 1591." (Id. at 15.) The government therefore first addresses the scope of Section 1001(a) and the application of the enhanced penalty for matters relating to sex trafficking. It then addresses each of the defendant's motions individually and why the Court should reject those motions.

I.    **The Enhanced Penalty Under Section 1001(a) Applies When the Matter Relates to an Enumerated Offense.**

Section 1001(a) states, in relevant part that:

> [W]hoever, *in any matter within the jurisdiction of the executive . . . branch* of the Government of the United States, knowingly and willfully—
> (2) makes any materially false, fictitious, or fraudulent statement or representation . . .
> shall be fined under [Title 18], imprisoned not more than 5 years or, if the offense involves international or domestic terrorism . . . imprisoned not more than 8 years or both. *If the matter* relates to an offense under chapter 109A, 109B, 110, or 117, or section 1591 [Sex Trafficking], then the term of imprisonment imposed under this section shall be not more than 8 years.

18 U.S.C. § 1001(a) (emphasis added). As the statute says, it is "the matter with the jurisdiction" that must be related to one of the enumerated offenses. The statute does not require that the false statements or representations themselves relate to the enumerated offenses.[1] Congress could have chosen to impose this requirement, but it did not.

---

[1] Similarly, the relevant provisions of the U.S. Sentencing Guidelines state that a defendant's guidelines should be increased by four levels if the defendant is convicted of a violation of Section 1001 and "[the] statutory maximum term of eight years' imprisonment applies because *the matter* relates to sex offenses under 18 U.S.C. § 1591." U.S.S.G. § 2J1.2(b)(1)(A) (emphasis added). The defendant is therefore incorrect to claim that the Sentencing Guidelines require the false statements to relate to one of the enumerated sex offenses. (Dkt. 52 at 8.)

The Court's interpretation of this statute "'necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there.'" *United States v. McCray*, 17-CR-147-LJV, 346 F.Supp.3d 363, 366 (W.D.N.Y. 2018) (quoting *United States* v. *Maynard*, 743 F.3d 374, 381 (2d Cir. 2014); *Dobrova* v. *Holder*, 607 F.3d 297, 301 (2d Cir. 2009)). "In conducting such an analysis, [the court will] 'review the statutory text, considering the ordinary or natural meaning of the words chosen by Congress, as well as the placement and purpose of those words in the statutory scheme.'" *Id.* (quoting *Dobrova*, 607 F.3d at 301).  The Second Circuit has consistently held that "'statutory construction begins with the plain text' and that '[t]he text's plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute.'"  *United States  v. Epskamp*, 832 F.3d 154, 162 (2d Cir. 2016); *United States v. Gayle*, 342 F.3d 89, 92–93 (2d Cir. 2003).

Here, the statutory language is plain that the § 1001(a) enhanced penalty applies where "in any matter within the jurisdiction of the executive . . . branch" … "the matter relates to an offense … under … section 1591."  The plain meaning of the statute does not require the government prove that the materially false, fraudulent or fictitious statement or representation relates to a section 1591 offense or impose any requirement that the defendant knew that the matter under investigation related to a section 1591 offense.  *See United States v. Escalera,* 957 F.3d 122, 131-132 (2d Cir. 2020) (finding that § 1001 did not require a "'specific intent to deceive the Federal Government' or 'actual knowledge that false statements were made in a matter within federal agency jurisdiction.'") (citing *United States v. Yermian*, 468 U.S. 63, 68 (1984)).    Rather, the sentencing enhancement language of § 1001 merely modifies the

6

jurisdictional language "in any matter within the jurisdiction" by imposing an increased penalty for specifically enumerated "matters."

The placement of the words in the statutory scheme and the particular words chosen by Congress further support this conclusion. Congress imposed two separate enhanced penalties for section 1001(a) offenses. The first, enacted in 2004 as part of the "Intelligence Reform and Terrorism Prevention Act of 2004," established an enhanced penalty "if the offense involves international or domestic terrorism." 18 U.S.C. § 1001(a); INTELLIGENCE REFORM AND TERRORISM PREVENTION ACT OF 2004, PL 108–458, December 17, 2004, 118 Stat 3638. Just two years later, as part of the Adam Walsh Child Protection and Safety Act of 2006, Congress established the enhanced penalty at issue here. *See* ADAM WALSH CHILD PROTECTION AND SAFETY ACT OF 2006, PL 109–248, July 27, 2006, 120 Stat 587. The placement of the words in the statutory scheme, along with the intentional rejection of the narrower "offense involves" language imposed in 2004, supports the conclusion that the plain meaning of the words "[i]f the matter relates to an offense under" is that the government must only prove that the "matter under the jurisdiction" of the FBI and HSI "relates to" a section 1591 offense.

The relevant question is whether "the matter" being investigated by federal agents when the defendant was interviewed on September 30, 2022, was "related" to sex trafficking. Section 1001(a) does not define "relates." However, in the absence of a definition, "[a] fundamental canon [of statutory interpretation] 'is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.'" *United States v. Vado*, 14-cr-666, 2015 WL 1611337, at *6 (S.D.N.Y. Apr. 10, 2015) (quoting *Harris v. Sullivan*, 968 F.2d 263, 265 (2d Cir.1992)); *see also McCray*, 346 F. Supp. 3d at 367 ("When a term is

not defined by statute, however, the term is given its ordinary meaning") (citing *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 85 (2018)).  As the Supreme Court has held, "[t]he ordinary meaning of [relating to] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'"  *Morales v. Trans World Airlines,* 504 U.S. 374, 383 (1992) (quoting *Black's Law Dictionary* 1158 (5th ed.1979)); *see also United States v. Agrawal,* 726 F. 3d 235, 244 (2d Cir. 2013) (finding that "[t]he use of so deliberately expansive a term as 'related to' . . . . is intended to reach broadly rather than narrowly, consistent with its usual meaning").

The Second Circuit has found that in the specific context of sentencing enhancements, the term "relating to" is to be interpreted broadly.  For example, in *United States v. Barker,* the defendant challenged whether his prior conviction under Vermont's statutory rape law counted as a prior conviction under a state law "relating to . . . abusive sexual conduct involving a minor," under 18 U.S.C. § 2252(b)(2) such that his mandatory minimum penalty for possession of child pornography was increased to ten years.  723 F.3d 315, 317-18 (2d Cir. 2013).  The Second Circuit held that "[i]n the context of sentencing enhancements, 'relating to' has been 'broadly interpreted . . . to apply not simply to state offenses that are equivalent to sexual abuse, but rather to 'any state offense that *stands in some relation [to], bears upon, or is associated with* [the] generic offense.'"  *Id.* at 322-23 (quoting *United States v. Strickland*, 601 F.3d 963, 967 (9th Cir. 2010)) (emphasis added).  *See also United States v. Ragonese*, 47 F. 4th 106, 111-112 (2d Cir. 2022) (finding that the "precise purpose" behind Congress' use of "relating to" in the context of a sentencing enhancement based on a prior sex state offense conviction was to "loosen" the comparison between federal and state offenses).

8

Here, the superseding indictment clearly alleges—and the government will prove at trial—that the "matter" was the investigation of Peter Gerace and that this investigation "relate[d] to" sex trafficking.    The superseding indictment states "Gerace was under investigation by federal law enforcement . . . for engaging in sex trafficking and drug trafficking activities" and that he was in fact later charged with conspiracy to commit sex trafficking.  (Dkt. 46 at 2-3.)  It was in the context of the Gerace investigation, *i.e.*, in "the matter," that the FBI interviewed the defendant on September 30, 2022.  The FBI had evidence that Gerace was engaged in sex trafficking and drug trafficking at Pharoah's Gentlemen's Club (PGC).  The investigators had evidence that Gerace improperly and illegally leveraged his relationships with law enforcement personnel in order to shield his activities.  And they had evidence that the defendant had a relationship with the Gerace that appeared to go far beyond that of a professional relationship between a complainant and an investigating police officer.  The scope of the Gerace investigation bore relation to the defendant's interview by the FBI.  During the interview, the defendant was questioned about his relationship with Gerace, as well as his involvement in the investigation and arrest of Phlycia Hunt, a key witness to Gerace's drug and sex trafficking activities.  Defendant was also specifically asked, regarding his visits to PGC, whether "at any of those ten times, did you ever feel or see any … illegal activity like drugs … prostitution."  In response to these questions, the defendant lied about his relationship with Gerace, lied about his involvement in the investigation and arrest of Hunt, and lied about the extent and timing of his contact with Gerace.  Regardless of the sentencing enhancement element, all of the evidence of the background and focus of the Gerace investigation is relevant and admissible at trial to prove that the defendant's lies were material and to allow the jury to understand the questions asked

of the defendant during the interview. The evidence that establishes the sentencing enhancement—that the matter related to an offense under section 1591—is inextricably intertwined with the proof at trial.

The only Court of Appeals to have addressed the application of this sentencing enhancement similarly concluded that its application rests upon the scope of the matter within the jurisdiction of the executive branch, rather than the contents of the specific false statements. In *United States v. Legins*, the Fourth Circuit rejected the district court's application of the eight-year statutory maximum because "neither the indictment nor the jury verdict contained sufficient facts on which to try or convict Legins on an 8-year aggravated § 1001 offense." 34 F.4th 304, 318 (4th Cir. 2022). In *Legins*, the defendant, a prison guard, was charged and convicted of violating § 1001(a)(2) based on the defendant falsely denying that he engaged in a sexual act with any inmate at any time when, in fact, he had engaged in such a sexual act. *Id.* at 318. While the materially false statements at issue did appear to relate to a Chapter 109A offense, the *Legins* court held that the 8-year penalty could not apply because "that fact was never alleged in the indictment, never stipulated to by the defendant, and never found by the jury." *Id.* [2]

However, the *Legins* court aptly explained the § 1001(a) sentencing enhancement in finding that "the aggravating factor in § 1001 depends not on a statement's *contents*, but rather the *context* in which it was made. The jury's findings turned on the conduct that rendered the statement false, while the aggravating factor depends on the nature of the investigation." *Id.* The Court then posed an instructive hypothetical: would the sentencing enhancement apply

---

[2] This is precisely the issue that the government sought to address in superseding the indictment in this case.

if the matter being investigated was taking bribes from a prisoner, but during the interview the defendant lied about performing sexual acts with a prisoner? *Id.* The *Legins* court said that the enhancement would not apply—even though the false statements related to an enumerated offense covered by the enhancement—because the matter itself concerned investigation of bribery, not one of the enumerated offenses. *Id.* Yet this is what the defendant in the instant case urges this Court to do: to ignore the matter being investigated and instead focus solely on the contents of the defendant's statements. This is incorrect. The determining factor is not the "contents" of the false statement, but rather the "context" in which it was made. In this case, the "context" in which the defendant was interviewed was in the course of an investigation of Peter Gerace's drug and sex trafficking activities, and Gerace's corrupt use of law enforcement relationships to protect those activities.

Defendant also cites an unpublished 2009 District Court opinion from New Mexico, *United States v. Paz*. Dkt. 08-1374-JP, 2009 WL 10707056 (Aug. 9, 2009). However, *Paz* is unpersuasive for several reasons. First, the indictment in *Paz* did not allege the statutory sentencing enhancement and when the defendant pled guilty to the indictment, she was advised that the maximum penalty was five-years. *Id.* at *1. Second, the *Paz* court found ambiguity in the statute where none exists, and decided to apply the rule of lenity. *Id.* at *3. As laid out above, the sentencing enhancement and accompanying language impose the increased statutory maximum where the matter under investigation "relates to" an offense under section 1591. The sentencing enhancement applies to provide for increased punishment where material false statements relate to sex offense investigations, and thereby protects the public from sex offenders and offenders against children by protecting the

11

integrity of the matters under investigation.  On this point, the *Paz* analysis should be rejected because nothing in the statutory text creates any ambiguity whatsoever.

In sum, the language of Section 1001 directs that the eight-year statutory maximum penalty applies when "the matter," in this case the investigation of Peter Gerace, "relates" to an enumerated offense such as sex trafficking.  It does so here.  The defendant's focus on the content of the alleged false statements rather than the context in which they were made is misplaced, and as such his motions should be denied.

## II.      The Court Should Deny the Defendant's Motion to Dismiss

An indictment is sufficient if it contains the elements of the offenses charged, fairly informs a defendant of the charges against which he must defend, and enables the defendant to plead double jeopardy in the event of further prosecution.  *See United States v. Alfonso,* 143 F.3d 772, 776 (2d Cir. 1998).  In this regard, the indictment "need do little more than . . . track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."  *Id.*  There can be no doubt the superseding indictment meets this standard.  It tracks the language of Section 1001(a)(2), specifies the nature of the alleged false statements, and provides the time and place of when those statements were made.  (Dkt. 36.)  For this reason alone, the defendant's motion to dismiss the indictment should be denied.

The dismissal of an indictment is an "extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights." *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001) (internal quotation marks & citation omitted).  Since "a presumption of regularity attaches to grand jury proceedings," *United States v. Leung*, 40 F.3d 577, 581 (2d Cir. 1994), defendants have the "burden of asserting that particularized and

factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment." *United States v. Abcasis*, 785 F. Supp. 1113, 1119 (E.D.N.Y. 1992). The defendant does not—and cannot—meet this standard.

The defendant appears to argue that the indictment must be dismissed because "[t]here is no evidence in the discovery provided supporting a claim that [the defendant's] allegedly false statements related to sex offenses allegedly committed by [Gerace]" and that assuming no such evidence was provided to the grand jury, this leads to dismissal of the indictment for failure of the government to provide the grand jury with evidence tending to negate the guilt of the accused. (Dkt. 52 at 12-13.) This argument is fundamentally flawed because, as discussed at length above, the statute simply does not require that the defendant's statements relate to sex trafficking or another enumerated offense.

However, even if the Court were to give credence to the defendant's argument that the evidence submitted to the grand jury was somehow lacking with respect to the application of the sentencing enhancement, this is not an appropriate basis upon which to dismiss the indictment (or, as discussed below, to inspect the grand jury minutes). Once a Court has determined that an indictment is valid on its face, it must not "look[ ] beyond the face of the indictment and dr[aw] inferences as to the proof that would be introduced by the government at trial." *Alfonso*, 143 F.3d at 776. Indeed, "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *United States v. Calandra*, 414 U.S. 338, 344-45 (1974); *see also United States v. Ciambrone*, 601 F.2d 616, 622 (2d Cir. 1979) (holding that defendant convicted for making false declarations under oath was not entitled to have his conviction reversed and the

indictment dismissed based on allegations that the grand jury had been misled); *United States v. Wedd*, 993 F.3d 104, 121 (2d Cir. 2021) ("At the indictment stage, we do not evaluate the adequacy of the facts to satisfy the elements of the charged offense. That is something we do after trial"). The defendant's speculation as to the adequacy of the evidence presented to the grand jury does not come close to meeting the standard necessary for this Court to consider dismissing the indictment and as such his motion should be denied.

### III.    There Is No Basis for the Court to Inspect the Grand Jury Minutes

Pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure, a Court may only permit disclosure of matters occurring before the grand jury "at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the Grand Jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). That rule places the burden upon a defendant to show a particularized need for grand jury minutes that outweighs the policy of secrecy and presumption of regularity before such minutes are turned over. *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959); *In Re Grand Jury Investigation (General Motors Corp.)*, 32 F.R.D. 1975 (S.D.N.Y.), *appeal dismissed*, 318 F.2d 533, *cert. denied*, 375 U.S. 802 (1963). Resultingly, "review of grand jury minutes is rarely permitted without specific factual allegations of governmental misconduct." *United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990) *overruled on other grounds as recognized by United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010). The defendant has made no such showing here and thus his motion should be denied.

As with the defendant's other motions, the basis to request inspection of the grand jury minutes is his claim that there was "insufficient evidence before [the grand jury] of any

relationship between the false statements alleged and any § 1591 offense." (Dkt. 52 at ¶ 36.)

Because this argument incorrectly assumes that the alleged false statement must relate to the

Section 1591 offense, it does not demonstrate the necessary "particularized need" or

"compelling necessity" to justify inspection of the grand jury minutes.

The defendant also argues that if no such evidence was presented to the grand jury,

the allegation in the indictment that "the matter" related to sex trafficking "is merely

inflammatory and prejudicial and should be stricken on that basis." (Dkt. 52 at 14) (internal

quotations and citations omitted); *see also* (Dkt. 52 at 15.) As the government has repeatedly

stated, its proof at trial will be the same regardless of whether the sentencing enhancement

language is included in the indictment; the evidence pertaining to the "matter" being

investigated is "inextricably intertwined" with the charged offense. *See United States v. Carboni*,

204 F.3d 39, 44 (2d Cir. 2000). And the government is entitled to prove its case by evidence

of its own choice. *See Old Chief v. United States*, 519 U.S. 172, 186-87 (1997). Thus, its

inclusion does not cause the defendant any unfair prejudice. Even were the defendant to

stipulate that the sentencing enhancement applies, or were the Court to bifurcate the trial,

only addressing the application of the sentencing enhancement if the jury first finds that the

defendant is guilty of having violated Section 1001, the government would still need to

introduce evidence pertaining to the matter the FBI was investigating to prove the essential

element of "materiality," that is, that the defendant's statements have "'a natural tendency to

influence, or [be] capable of influencing, the decision of the decisionmaking body to which it

was addressed.'" *See United States v. Gaudin*, 515 U.S. 506, 510 (1995) (citation omitted).

**IV.    The Defendant Fails to Articulate a Valid Basis to Require the Government to File a Bill of Particulars.**

The defendant requests a bill of particulars as to "the manner in which [the defendant's] alleged false statements are 'related' to an offense under 18 U.S.C. § 1591." (Dkt. 52 at 15.)  Even setting aside the fact that the superseding indictment alleges that the matter, not the false statements, relates to an offense under Section 1591, the bill of particulars that the defendant requests is not appropriate.  A bill of particulars is intended to allow a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling the defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).  The original indictment met this standard, (*see* Dkt. 28 at 6-8), and the additional language in the superseding indictment does not change this determination.

A bill of particulars "should not be substituted for a form of discovery—it 'should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense.'" *United States v. Cobb*, 544 F. Supp. 3d 310, 326 (W.D.N.Y. 2021) (quoting *United States v. Henry*, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994)).  The government is not obligated to disclose either the manner in which it will attempt to prove the charge nor is it appropriate for a defendant to use Rule 7(f) as a mechanism to limit the government's evidence or flush out its prosecutorial theories in advance of trial. *See United States v. Weinberg*, 656 F. Supp. 1020, 1029 (E.D.N.Y. 1987) (overruled on other grounds).

Even if a bill of particulars was an appropriate mechanism for the requested information, the motion should nevertheless be denied where, as is the case here, the

16

government has provided the information "in some acceptable alternate form." *United States v. Pirk*, 267 F. Supp. 3d 392, 403 (W.D.N.Y. 2017) (internal quotation and citation omitted); *see also United States v. Ojeda*, 412 Fed. Appx. 410, 411 (2d Cir. 2011) ("[A] bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means") (citation omitted).  In addition to all the discovery previously provided, the government has now turned over Jencks Act/3500 materials to the defendant. It has also filed its exhibit list, its witness list, and its pretrial memorandum, which sets forth in detail how the government intends to prove its case.  In light of all these disclosures, there simply cannot be any argument that a bill of particulars is necessary or justified.

## V.     The Defendant Is Not Entitled to Additional Discovery.

The defendant makes a non-specific request for discovery pursuant to, *inter alia*, Federal Rule of Criminal Procedure 16, 18 U.S.C. § 3500, and *Brady v. Maryland*, 373 U.S. 83 (1963).  (Dkt. 52 at 16.)  The government has, to date, fully complied with its discovery obligations and will continue to do so.  The government does not intend to introduce evidence against the defendant pursuant to Federal Rules of Evidence 404(b), 608(b), or 609(a).

## VI.    The Government Does Not Consent to Waiver of a Jury Trial.

The defendant requests a non-jury trial and waives his right to a jury trial pursuant to Federal Rule of Criminal Procedure 23(a)(1).  The government does not consent to a non-jury trial and therefore the trial must be by jury.  Fed. R. Crim. P. 23.

## **CONCLUSION**

For the reasons stated above, the Court should deny the defendant's motions and deny

the defendant's request for a non-jury trial.


DATED:  Buffalo, New York, May 19, 2025.


MICHAEL DIGIACOMO
United States Attorney

BY:   /s/ DOUGLAS A. C. PENROSE
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5868
Douglas.Penrose@usdoj.gov

/s/ EVAN K. GLABERSON
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5871
Evan.Glaberson@usdoj.gov